The NAVAJO TRIBE OF INDIANS

v.

The UNITED STATES.

No. 69.

United States Court of Claims.

June 13, 1979.

William C. Schaab, Albuquerque, N.M., attorney of record for plaintiff; Rodey, Dickason, Sloan, Akin & Robb, Paul D. Barber, and Sarah W. Barlow, Albuquerque, N.M., of counsel.

Dean K. Dunsmore, Washington, D.C., with whom was Asst. Atty. Gen., James W. Moorman, Washington, D.C., for defendant.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and SMITH, Judge.

## OPINION

FRIEDMAN, Chief Judge:

This case, byzantine in complexity, has been transferred from the Indian Claims Commission pursuant to Pub.L.No.94–465, 90 Stat. 1990 (1976), and is now before us on the parties' requests for review of two rulings of Trial Judge C. Murray Bernhardt. In those rulings the trial judge resolved various contentions of the parties regarding the interrelationship of claims pending in various Commission dockets and the status of certain claims in this case. We find it unnecessary to resolve most of those contentions since we conclude that the plaintiff voluntarily withdrew all of the claims involved in this case after the applicable limitations period had run, and that those claims therefore are time barred. Accordingly, we dismiss claims one through six and claim eight of the petition.[1]

### I.

The original petition in this case, filed with the Indian Claims Commission in July 1950, as Docket No. 69, contained eight claims. Each claim consisted of (1) a general recitation of facts, and (2) a paragraph stating the claim arising from those facts. The initial paragraph of claims two through eight incorporated by reference the general recitations of fact stated at the beginning of the preceding claims. Paragraph 30 of the petition contained the prayer for relief.

The first four claims and the sixth claim essentially alleged (1) violation of the government's obligation, pursuant to an 1848 treaty with Mexico and an 1850 treaty with the plaintiff, to protect the plaintiff's property rights; (2) invalidity of an 1868 treaty with the tribe on the grounds of fraud and duress, unconscionable consideration, and unilateral mistake; and (3) failure to provide educational and other services pursuant to the 1868 treaty. The fifth claim alleged that the government, by exploiting and allowing others to exploit the natural resources of the tribe without adequate consideration, violated its fiduciary duty under the 1868 treaty. The seventh claim, a general accounting claim, has been consolidated with the accounting claims in Docket Nos. 299 and 353, and is not before us here. The eighth claim alleged violation of a promise by officers of the United States to return certain lands "to the East" in return for the Navajos' service in the Apache wars.

In August 1951, the plaintiff's claims attorney decided to divide into four separate dockets the eight claims of the original petition. The plaintiff filed a new petition in each of three new dockets, and allowed the petition in this docket (No. 69) to stand, without modification, as the general pleading. The tribe presented a taking claim, based upon facts originally set forth in Docket No. 69, in the petition in Docket No. 229. A claim for mismanagement of re-

---

1. This dismissal is without prejudice to the plaintiff's assertion of any of these claims in other dockets involving the plaintiff if those claims in fact are present in those dockets.

The dismissal of the claims in this case because the plaintiff voluntarily withdrew them would not support the contention that the dismissal is res judicata of the merits of those claims.

sources was presented in Docket No. 353 for oil and gas resources, and in Docket No. 299 for other resources. Thus, many of the claims originally presented in the original docket (No. 69) overlapped with the claims asserted in the subsequent dockets.

Separation of the plaintiff's claims into four dockets did not simplify or abbreviate the litigation of this case. Although almost three decades have passed since the filing of the original petition, the government has yet to file an answer. Instead, in the words of Trial Judge Bernhardt, there has been a "protracted siege of motions." In response to a government request for greater specificity and a Commission order to file an amended petition in Docket No. 69 no later than September 30, 1969, plaintiff filed a First Amended Petition on October 1, 1969. The entire amended petition read as follows:

> The petition is amended by deleting paragraphs 10, 16, 19, 21, 23, 25 and 29, thereby withdrawing from consideration herein the first, second, third, fourth, fifth, sixth, and eighth claims.

The government, on July 18, 1974, sought entry of final judgment in its favor on those claims. The Commission, on January 23, 1975, granted a motion by the plaintiff to amend its petition in Docket No. 69 by "reformulating" the first six claims. *Navajo Tribe v. United States*, 35 Ind.Cl.Comm. 305, 315 (1975). The Commission denied a motion for certification of that ruling to this court. *Navajo Tribe v. United States*, 36 Ind.Cl.Comm. 215 (1975).

On June 3, 1976, the government filed a motion to dismiss or for a more definite statement. The Commission transferred the case in Docket No. 69 to this court without ruling on the motion. On January 23, 1978, Trial Judge Bernhardt ruled on the motion, and on May 2, 1978, he issued an order on the tribe's motion for reconsideration of his January 23 ruling. With respect to the Commission's reinstatement of the dismissed claims after the limitations period had run, the trial judge denied the government's motion to dismiss the reinstated claims on the ground that those claims related back to the original petition.

## II.

■ The applicable statute of limitations in the Indian Claims Commission Act, 25 U.S.C. § 70k, is a jurisdictional limitation upon the authority of the Commission to consider claims. *United States v. Lower Sioux Indian Community*, 519 F.2d 1378, 1382, 207 Ct.Cl. 492, 501 (1975); *Snoqualmie Tribe v. United States*, 372 F.2d 951, 960, 178 Ct.Cl. 570, 586 (1967). The provision, which defines the extent of the government's waiver of sovereign immunity, bars any claim not "presented" to the Commission on or before August 13, 1951. In this case, the original petition in Docket No. 69 was timely filed in July 1950, but the claims in question were withdrawn in 1969. The second amended petition, in effect reasserting the withdrawn claims, was not filed until 1975.

The Commission allowed the plaintiff to reinstate the withdrawn claims in 1975 on the ground that the "reformulated" claims were based upon and related back to the general recitations of fact in the original petition which were not withdrawn. 35 Ind.Cl.Comm. at 307. Although the 1969 amended petition "deleted" only the specific paragraphs which stated the claims in some detail, and not the general factual allegations preceding those paragraphs upon which the claims were based, the deleted paragraphs were the actual statements of the claims. Indeed, the plaintiff recognized in its 1969 amendment that by deleting those paragraphs it was "*thereby withdrawing from consideration herein the first, second, third, fourth, fifth, sixth, and eighth claims*" (emphasis added).

The decision whether to dismiss all or part of a case lies with the plaintiff (subject to any necessary authorizations by the tribunal). In this case, for reasons not fully explained in the record, the tribe's claims counsel chose to withdraw the claims in question. Perhaps the attorney was unable to comply with the Commission's order for greater specificity, or sought to make the case more manageable by simplifying the

claims and eliminating or reducing duplication.

■ Whatever his reasons, whether wise or ill-founded, the decision to withdraw these particular claims was a tactical decision similar to those attorneys constantly must make in the conduct of litigation. The plaintiff is bound by the actions of its attorney.

The plaintiff contends, however, that its attorney had no authority to withdraw those claims. It relies upon paragraph 6 of the contract between it and the attorney, which provided:

6. *Compromises and Settlements.* Any compromise, settlement or other adjustment of the claims shall be subject to the approval of the TRIBE and the SECRETARY [OF THE INTERIOR].[2]

The Commission presumed that the word "adjustment" covered the withdrawal of the claims, and noted that the record did not indicate whether the tribe had approved the withdrawal. 35 Ind.Cl.Comm. at 307, n. 2.

■ We construe this provision as requiring tribal and secretarial approval only of compromises, settlements, and similar adjustments of claims, *i. e.*, the termination of claims in return for some consideration given in exchange therefor. Paragraph 6 did not limit the attorney's authority to withdraw certain claims, several of which probably were duplicative of those in other dockets, for what he perceived to be sound tactical or strategic reasons. That was precisely the kind of decision the attorney would have to make in carrying out his duty under paragraph 2 of the contract "to diligently prosecute the claims and to exert his best efforts to satisfactorily conclude them within the term of this contract." Indeed, an attorney could not effectively conduct such a major Indian claims case as this if he had to obtain the prior approval of his client and the Secretary before he could take such action.

Trial Judge Bernhardt upheld the Commission's reinstatement of the withdrawn claims on the ground that the second amended petition met the liberal notice requirement applied in determining whether an amended petition filed with the Commission after the limitations period related back to the original timely petition. The trial judge relied on *United States v. Lower Sioux Indian Community in Minn.*, 519 F.2d 1378, 207 Ct.Cl. 492 (1975), *United States v. Northern Paiute Nation*, 393 F.2d 786, 183 Ct.Cl. 321 (1968), and *Snoqualmie Tribe of Indians v. United States*, 372 F.2d 951, 178 Ct.Cl. 570 (1967). Those decisions dealt with the question whether allegations in a timely petition were sufficient to cover the claims asserted in an otherwise untimely amendment. In the *Snoqualmie* case, we held that the requirement of the statute of limitations, that claims be "presented" within the limitations period, "should be read liberally to permit an amended pleading to relate back where there is sufficient notice." 372 F.2d at 961, 178 Ct.Cl. at 588.

That principle, however, has no application in a case in which the plaintiff has withdrawn its original claims and then seeks to reinstate them after the limitations period has run. The question here is not, as in those cases, the construction of the original petition; the issue before us is the effect of the plaintiff's voluntary dismissal of its claims in 1969.

### III.

■ The first amended petition was in effect, if not in form, a voluntary dismissal of the plaintiff's nonaccounting claims in Docket No. 69. The amendment was filed pursuant to an order of the Commission, and no further authorization or action of the Commission was required. The Supreme Court stated the applicable rule in *Willard v. Wood*: "[W]here *from any cause* a plaintiff becomes nonsuit or the action abates or *is dismissed*, and, during the pendency of the action the limitation runs, the

2. Although the contract refers to Docket No. 89 before the Commission, we assume that was a typographical error, and the reference should have been to Docket No. 69. There is no Docket No. 89 in this case.

remedy is barred." 164 U.S. 502, 523, 17 S.Ct. 176, 181, 41 L.Ed. 531 (1896) (emphasis added). In this case, the claims were dismissed because the plaintiff chose to do so. Following the dismissal, the situation stood as if the withdrawn claims had never been filed. *A. B. Dick Co. v. Marr*, 197 F.2d 498, 502 (2d Cir.), *cert. denied*, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 *rehearing denied*, 344 U.S. 905 (1952); *Maryland Cas. Co. v. Latham*, 41 F.2d 312 (5th Cir. 1930). For purposes of the statute of limitations, the claims contained in the second amended petition were "presented" for the first time in 1975, and the Commission lacked jurisdiction to hear them.[3]

### IV.

Before concluding this opinion, we advert to a problem that exists in this case and probably in a number of other cases that the Indian Claims Commission recently has transferred to this court. That is the subject of delay. All of these cases were pending before the Commission for more than a quarter of a century, and some of them still are a long way from completion. The cases of which this docket is one part involve a wide variety of claims by the Navajo Tribe. The government has not yet filed its answer in some or all of the dockets. Unless drastic and effective steps are taken to expedite the proceedings in these Indian Claims Commission cases, they threaten to drag on indefinitely.

The trial judges have an obligation to expedite these cases, and to take all necessary steps to insure their speedy determination. Many of the cases are complicated and difficult. There is a need for innovative handling and treatment, perhaps to devise new procedures that will end the delays that have plagued these cases for so many years. We have faith in the ability of the trial judges to develop such techniques. We expect the cases to be completed within a reasonable time.

More specifically, we direct the trial judge in the Navajo cases to file within 90 days, and after consultation with counsel, a timetable setting forth firm time limits for the proceedings in Docket Nos. 229, 299, and 353. These time limits should cover the filing of any further pleadings and amendments thereto, the filing of all dispositive or procedural motions, the completion of pretrial proceedings, and the trial of the cases. We expect the other trial judges to adopt similar timetables in cases transferred from the Commission

### CONCLUSION

Claims 1 through 6 and claim 8 in Docket No. 69 are dismissed.

---

**3.** The plaintiff challenges characterization of the issue as jurisdictional. It argues that, since it withdrew only the prayers for relief and not the claims themselves, those claims were "subsumed" under the comprehensive prayer for relief of paragraph 30 and under claim 7's incorporation of preceding factual allegations. As noted above, however, the withdrawn paragraphs were not merely prayers for relief, and claim 7 incorporated only general recitations of fact. Moreover, the Commission recognized that the claims in question were withdrawn, not subsumed in the surviving claim. *Navajo Tribe v. United States*, 31 Ind.Cl.Comm. 40, 41 (1973).