794 F.2d 1575
 123 L.R.R.M. (BNA) 3032
 P.M. BERGH, et al., Milton C. Croissant, et al., Larry L.
Johnson, et al., John C. Holen, et al., Myron L. Thomson, et
al., John W. Karr, et al., Stuart F. Etter, et al., Melvin
L. Beebe, et al., William C. Johnson, et al., Petitioners,
v.
DEPARTMENT OF TRANSPORTATION, FAA, Respondent.
 Appeal Nos. 85-1102, 85-1103, 85-1106, 85-1108, 85-1240 to
85-1243 and 85-1245.
 United States Court of Appeals,
Federal Circuit.
 July 2, 1986.
 
 Samuel J. Imperati, Aitchison, Imperati, Paull, Barnett & Sherwood, P.C., Portland, Or., argued, for petitioners. With him on brief, was James S. Coon, Paul Drachler, Gibbs, Douglas, Theiler & Drachler, Seattle, Wash., were on brief, for petitioner.
 Sandra P. Spooner, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on brief, were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director. Diane R. Liff, Office of the General Counsel, Dept. of Transp., Washington, D.C., of counsel.
 Before FRIEDMAN, SMITH, and BISSELL, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 
 1
 In this petition for review, former air traffic controllers challenge the decisions of the Merit Systems Protection Board (Board) upholding their removal by the Federal Aviation Administration (Administration) for participating in the illegal 1981 strike on various grounds. A major contention is that the Administration acted improperly by reinstating other controllers whom it also had removed for striking but not reinstating the petitioners. We reject the petitioners' challenges to the decisions of the Board and affirm them.
 
 
 2
 * Counsel for the petitioners requested oral arguments. We determined, however, that all but one of the issues the petitioners raised have been authoritatively decided in our previous decisions, that the facts and legal arguments were adequately presented in the briefs and record, and that the decisional process would not have been aided by oral argument. Fed.R.App.P. 34(a). We heard oral argument on the issue whether the Administration acted improperly in reinstating some, but not all, of the fired controllers.
 
 II
 
 3
 A. The parties stipulated that "[t]he FAA nationwide has reinstated some air traffic controllers/appellants who were removed for participation in the [air traffic controllers] strike pursuant to settlement agreement." The petitioners argue that the agency "violated MSPB principles and fundamental fairness by reinstating some controllers found guilty of striking, for no reason which can be discerned from the record." They cite Douglas v. Veterans Administration, 5 M.S.P.B. 313, 5 M.S.P.R. 280 (1981), and Woody v. General Services Administration, 6 M.S.P.B. 410, 6 M.S.P.R. 486 (1981), for the proposition that "where an appellant raises an allegation of disparate treatment in comparison to specified employees, the agency must prove a legitimate reason for the difference in treatment by a preponderance of the evidence before the penalty can be upheld." Woody, 6 M.S.P.R. at 488 (citing Douglas, 5 M.S.P.R. at 306-07). The petitioners assert that the agency "has provided no explanation, much less any evidence, as to why it vacated its findings and dismissed its charges against the reinstated controllers while denying petitioners this benefit."
 
 
 4
 Woody and Douglas, however, are inapposite because they deal solely with the question whether the penalty the agency selected was proper. The alleged disparate treatment here, however, does not involve any difference in the penalty imposed upon different employees--all the air traffic controllers involved were removed--but turns upon the propriety of the Administration's settling some of the cases before the Board by reinstating some controllers, and not explaining the reasons why it also did not enter into like settlements with the petitioners.
 
 
 5
 The agency has given the following explanation in its brief of the process by which, and the reasons why, it determined to settle some of the cases but not those of the petitioners:
 
 
 6
 The FAA conducted an in-depth analysis of each of the 11,000 cases of the removed air traffic controllers in preparation for the litigation before the MSPB. As part of the litigation strategy, the FAA undertook an analysis of the strengths and weaknesses of each case. Based on this individualized analysis, the agency made decisions to enter into settlement negotiations with certain air traffic controllers whose appeals were pending. As part of this analysis, the FAA also reviewed the individual cases of the petitioners and made individual determinations that settlement was not warranted in these cases. The agency embarked on the litigation analysis in order to best prepare its cases for hearings, not under any policy to settle cases. The cases selected for settlement were those whose examination demonstrated to the FAA that further litigation would not be successful.
 
 
 7
 We know of no principle that precludes the government from settling, upon whatever terms it deems suitable, cases in which it determines that the likelihood of success is so low as to make continued litigation inappropriate. The decision whether to settle a particular case and upon what terms is a matter particularly within the discretion of the agency conducting the litigation. The agency was not required to give detailed reasons in each particular case concerning the facts that led it to settle rather than to litigate, as the petitioners apparently would require it to do. The agency's statement that based upon "an analysis of the strengths and weaknesses of each case," it decided not to conduct "further litigation" of those cases where the analysis indicated that such litigation "would not be successful," was a sufficient explanation for the settlements the government made.
 
 
 8
 The law favors settlement of cases. United States v. Contra Costa County Water District, 678 F.2d 90, 92 (9th Cir.1982); Stotts v. Memphis Fire Department, 679 F.2d 541, 565 (6th Cir.1982); Airline Stewards & Stewardesses Association, Local 550, TWU, AFL-CIO v. American Airlines, 573 F.2d 960, 963 (7th Cir.1978); Florida Trailer & Equipment Co. v. Deal, 284 F.2d 567, 571 (5th Cir.1960); Fed.R.Evid. 408 advisory committee note. The government is to be commended, not criticized, for deciding not to litigate those of the vast number of air traffic controller cases pending before the Board in which it concluded that its likelihood of success was so small as to make continued litigation unwise.
 
 
 9
 B. The petitioners next contend that the Administration denied them equal protection because, due to friendship or personal favoritism, Administration officials notified other air traffic controllers, but not the petitioners, of their deadline shift for reporting to work. They rely upon Olshock v. Village of Skokie, 411 F.Supp. 257 (N.D.Ill.), aff'd, 541 F.2d 1254 (7th Cir.1976). In Olshock, during a police officers strike the Village of Skokie took an informal poll to determine which officers might return to work. Those who said they would do so were notified that if they reported by a specific date, they would not be discharged, but merely suspended. The court held that
 
 
 10
 [t]he failure of defendants to give all the 59 striking policemen notice that they would not be discharged if they reported for duty in uniform on or prior to July 13, 1975, and the failure of defendants to give said notice to the plaintiffs herein, constituted a failure to provide equal protection of the laws to plaintiffs within the meaning of and as required by the Fourteenth Amendment to the United States Constitution....
 
 
 11
 Id. at 265.
 
 
 12
 The rationale of Olshock was that the Village unfairly had discriminated against those officers who were not notified that if they reported by the deadline, they would not be discharged, in favor of those who were notified. In that situation, the non-notified officers were not aware of the deadline and the consequences of failing to meet it. The air traffic controllers, however, were in a quite different situation, for we have held that
 
 
 13
 [e]ach petitioner knew when his next regularly-scheduled shift commenced and elected not to show up at that time. Having disregarded the initial 48 hour moratorium, petitioners can hardly complain that they were not specifically and personally notified that each had an opportunity to also disregard an extension of that moratorium.
 
 
 14
 Adams v. Department of Transportation, FAA, 735 F.2d 488, 491 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).
 
 
 15
 The petitioners argue, however, that even if the Administration was not required to notify all the air traffic controllers of their deadline shifts, it could not selectively notify some but not others. The petitioners point out that Mr. Helms, the administrator of the agency, issued a "directive" that supervisors should encourage their friends to come back to work.
 
 
 16
 The Helms statement, however, did not relate to notifying controllers of their deadline shifts, but only urged supervisors to encourage controllers with whom they were friendly to return to work. In his testimony Mr. Cox, a supervisor at one of the towers involved, explained the scope and purpose of the Helms statement:
 
 
 17
 Q Now in this telecon, Mr. Helms advised that he did not want supervisors to be calling controllers as supervisors, is that right?
 
 
 18
 A That was not a directive. He suggested that the Agency--he said the Agency was not going to instruct supervisors to make calls as supervisors to their people.
 
 
 19
 Q So he said that as far as the Agency's position was concerned, as a supervisor you were not being directed to call--
 
 
 20
 A That's correct.
 
 
 21
 Q Controllers, is that correct? But he did say that the Agency was suggesting that supervisors call controllers as personal friends?A I think that's a little liberal. My interpretation of what I heard was that if you felt, and if you were concerned about these people as friends--he wasn't suggesting to call everybody as a friend. What he was saying is that if you had someone you were especially concerned about as a friend, that you could be influential with and answer questions, go ahead and give him a call.
 
 
 22
 C. The petitioners argue that the Administration "erroneously decided that 5 U.S.C. Section 7311 require[d] dismissal of any employee found guilty of striking," whereas that statute permitted the agency to impose a lesser penalty. We rejected a similar contention in Schapansky v. Department of Transportation, FAA, 735 F.2d 477 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984), where we ruled that
 
 
 23
 [w]hether removal is mandatory under 5 U.S.C. Sec. 7311 or 18 U.S.C. Sec. 1918 need not be here decided. Removal is permissible under those statutes and no statute prohibits removal of any who strike against the United States.
 
 
 24
 Id. at 485.
 
 
 25
 Similarly, in the present case we cannot find that the Administration abused its discretion or otherwise acted improperly in concluding that the appropriate penalty for the petitioners' illegally striking against the government was removal.
 
 
 26
 D. Two of the petitioners (Burkett, No. 85-1102, and Johnson, No. 85-1245) contend that their failure to report for work resulted not from participation in the strike but because they were confused about their deadline shift for reporting. We have rejected similar claims in Anderson v. Department of Transportation, FAA, 735 F.2d 537 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984); Adams v. Department of Transportation, FAA, 735 F.2d 488 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984); and Dorrance v. Department of Transportation, FAA, 735 F.2d 516 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). For the reasons given in those opinions, we also reject the claim here.
 
 
 27
 The decisions of the Merit Systems Protection Board upholding the removal of the petitioners are affirmed.
 
 
 28
 AFFIRMED.