FRIEDMAN, Circuit Judge.
This is an appeal from a judgment of the United States Claims Court, in a proceeding under the Indian Claims Act, 25 U.S.C. §§ 70 to 70n (1976), entered without trial or findings of fact, that awarded as a final judgment terminating the litigation the amount of a settlement negotiated between the United States and counsel for the Sioux Tribe of Indians, which a majority of the constituent tribes had rejected. We vacate and remand for further proceedings.
I
A. This case concerns compensation for lands acquired by the United States pursuant to a treaty with the tribes of the Sioux Nation (sometimes called the Sioux Tribe) signed on April 29, 1868. 15 Stat. 635 (1868 Treaty). The 1868 Treaty effected the cession of a large part of land in North and South Dakota, Nebraska, Wyoming, and Montana, to which the Sioux Nation had aboriginal title. It also established a reservation for the Indians and obligated the United States to provide various services and goods, and to make payments to the Sioux Nation.
The land reserved for the Sioux Nation by the 1868 Treaty included more than seven million acres in the Black Hills area of South Dakota. The Indians further retained the right to hunt in designated areas outside the reservation. The United States acquired this land and the hunting rights from the Sioux Nation by the Act of February 28, 1877, in which Congress “ratified” a treaty that the Indians had not approved. 19 Stat. 254 (1877 Act). The 1877 Act also required the United States to provide the Sioux Nation with services, goods, and “all *1048 necessary aid to assist ... in the work of civilization.”
B. The current litigation relating to these treaties and statutes was initiated by a claim the Sioux Nation filed in 1950 with the Indian Claims Commission (Commission). The Commission bifurcated that claim, separating the claims under the 1868 Treaty from those under the 1877 Act. See Sioux Nation of Indians v. United States, 33 Ind.Cl.Comm. 151, 152-53 (1974).
The Commission held that the government’s acquisition under the 1877 Act of the lands and hunting rights the Sioux Nation had retained under the 1868 Treaty constituted a taking of that property under the fifth amendment, for which the Indians were entitled to receive the fair market value of the land and other rights as of 1877, less the value of any compensation they had received, plus interest. Id. at 362-63. The Court of Claims affirmed most of the Commission decision, Sioux Nation of Indians v. United States, 601 F.2d 1157, 220 Ct.Cl. 442 (1979), aff’d, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). The Sioux Nation ultimately was awarded $105,994,430.52 for the taking under the 1877 Act. See Sioux Nation of Indians v. United States, 650 F.2d 244, 227 Ct.Cl. 404 (1981).
The present case involves the claim under the 1868 Treaty. The Commission first determined that the Sioux Nation had aboriginal title to the land obtained by the United States under the Treaty. Sioux Tribe v. United States, 23 Ind.Cl.Comm. 419 (1970), aff’d, 500 F.2d 458, 470-72, 205 Ct.Cl. 148 (1974). It subsequently found that the value of the land at the time of cession in 1869 was $45,685,000. Sioux Tribe v. United States, 38 Ind.Cl.Comm. 469, 532 (1976). The Commission disallowed any offsets by the government and, after making certain adjustments, awarded the Indians $43,949,700. Sioux Tribe v. United States, 42 Ind.Cl.Comm. 214, 257 (1978).
The Court of Claims reversed the denial of offsets. United States v. Sioux Tribe, 616 F.2d 485, 222 Ct.Cl. 421 (1980). It held that the 1868 Treaty was not a treaty of peace, as the Commission had held, but
was in major part a treaty of cession. Thus, the payments the government undertook to make and the goods and services it undertook to supply to the Sioux were, at least in substantial part, compensation for the land the Indians ceded to the government. ... The government accordingly is entitled to show which of the payments made and goods and services provided under the treaty were “payments ... on the claim” that are to be offset against the award.
Id. at 487.
The court further held that in determining whether the government was entitled to any gratuitous offsets, i.e., “money or property given to or funds expended gratuitously for the benefit of” the Indians, 25 U.S.C. § 70a (1976), the Commission was required to consider the “ ‘entire course of dealings’ between the United States and the Indians,” and could not deny gratuitous offsets, as the Commission did, solely by consideration of the years 1875-1877.
The court “remanded [the case] to [its] Trial Division to determine the merits of defendant’s claim for offsets based on both alleged payments on the claim and gratuitous offsets.” Id. at 494.
C. Prior to the Court of Claims remand, the government in October 1979 had made an offer to the Sioux Tribe’s attorneys to settle the offset issue for $4,200,000. This would have produced an award of $39,749,-700. The attorneys accepted the offer subject to conditions, which the government rejected. The Indians rejected the offer.
Before the Claims Court, the government asserted on the remand that it had offsets totaling $65 million.
In 1983, the government again offered to settle the offset issue for $4,200,000, but the eight member-tribes who constituted the Sioux Tribe refused to consider the settlement. The Claims Court, the successor to the Trial Division of the Court of Claims, then ordered the Sioux Tribe’s counsel formally to present the settlement *1049 offer to the tribes, and further directed the tribes, through their governing bodies, to consider and act upon the offer. Sioux Tribe of Indians v. United States, 3 Cl.Ct. 536 (1983).
Two of the tribes accepted the settlement, and four of them explicitly and two of them implicitly rejected it. See Sioux Tribe of Indians v. United States, 8 Cl.Ct. 80, 84, 86-90 (1985).
Following the Court of Claims remand in 1980, the judge of the Trial Division who was handling the case (the same individual now is the judge of the Claims Court to whom the case is assigned) directed the parties to file briefs on six legal issues relating to the offset question that the judge concluded were susceptible to summary disposition. Treating these briefings as, in effect, motions for summary judgment, the Claims Court in 1984 and 1985 issued three opinions deciding three of the summary judgment motions.
The court (1) rejected the Sioux Tribe’s contention that the government be denied any offsets for payments on the claim (as distinguished from gratuitous offsets), (2) held that the government was not entitled to deduct any gratuitous offsets from the fair value of the land, and (3) permitted the government to offset the value of land ($2,669,762.20) that the government inadvertently conveyed to the Sioux Nation as part of the Great Sioux Reservation under the 1868 Treaty. Sioux Tribe of Indians v. United States, 6 Cl.Ct. 91 (1984), Sioux Tribe of Indians v. United States, 7 Cl.Ct. 468 (1985), Sioux Tribe of Indians v. United States, 7 Cl.Ct. 481 (1985). The three other motions for summary judgment present questions relating to res judica-ta/collateral estoppel, the use of vouchers to prove offset claims, and miscellaneous issues. See Sioux Tribe, 8 Cl.Ct. at 83. The Claims Court has not decided those motions.
After the court issued its third summary judgment opinion, the court entered the judgment now under review. In that decision the court
terminate[d] this litigation and ... award[ed] the plaintiff $39,749,700 as fair and equitable compensation for its claims. This amount reflects the parties’ counsels’ negotiated settlement agreement as to what they considered to be fair and equitable compensation for the plaintiff’s claims, and, more importantly, it represents an amount that this Court believes constitutes fair and equitable compensation for the plaintiff’s historical claims, after taking into consideration the plaintiff’s interlocutory land valuation award of $43,949,700 and the Federal Government’s offset claims of some $65 million.
Id. at 81.
The court explained the reason for its action as follows:
At this time, the instant litigation has devolved into an uncontrolled quagmire. Counsel for the plaintiff, after negotiating a fair and equitable settlement of this case, were unable to effectively present the offer to the reservation tribes without a court order directing the reservation tribe’s [sic] to consider the offer. The simple fact that four of the reservation tribes are refusing to accept any settlement or award of this Court, which does not include the return of their land, is indicative of the plaintiff’s [sic] refusal to comprehend, after 35 years of litigation, that this Court can only award money judgments.
As a result, this Court can envjsion the continuation of this litigation ad infini-tum____ Thus, the case grinds its way slowly forward, regardless of the wishes of the plaintiff or of its attorneys, putting an ever-increasing burden on the resources of this Court. It may well be that the past leaders of the current reservation tribes initiated this suit, some 35 years ago, for reasons that are no longer consistent with the wishes of the current tribal governing bodies. However that may be, some rational direction in this lawsuit must be given.
Id. at 85-86.
The court stated that it was “imposing the negotiated settlement offer neither as a *1050 sanction nor as a settlement offer per se, but simply as the Court's considered judgment as to what would be fair and equitable compensation for the Sioux tribal land ceded under the 1868 Treaty.” Id. at 91-92.
The Sioux Tribe, the United States, and the Oglala Sioux Tribe (Oglala Tribe), one of the eight constituent tribes that comprise the Sioux Tribe, appealed from that judgment. The Sioux Tribe and the government sought summary reversal. In its motion for summary reversal, the Sioux Tribe argued:
(1) A judgment entered upon a proposed settlement to which the parties have not agreed is indefensible on its face. All of the parties to these appeals agree that entry of the judgment was contrary to law.
(2) The Claims Court plainly lacks power in equity or otherwise to enter judgment in the absence of a complete record — i.e., without passing upon the merits of the Government’s offset claims.
(3) The age and posture of this case justify summary remand with instructions to decide the merits with priority over all other matters.
After this court denied summary reversal, the Sioux Tribe changed its position. It now asks this court to affirm the “highly advantageous” judgment of the Claims Court.
II
The Claims Court gave two reasons for awarding the Sioux tribe $39,749,700 as the final judgment “terminatpng] this litigation”: (A) “This amount reflects the parties’ counsels’ negotiated settlement agreement as to what they considered to be fair and equitable compensation for the plaintiff’s claims”; (B) “[I]t represents an amount that this Court believes constitutes fair and equitable compensation for the plaintiff’s historical claims.”
Although the court understandably was frustrated by the inability of counsel to bring this overly protracted litigation to a conclusion and the insistence of four of the tribes upon a condition of settlement that was beyond the power of the court to award (return of the land they had ceded to the United States in 1868), neither of the grounds upon which the court relied justified the extraordinary action the court took of “impospng] the negotiated settlement offer as a final judgment and as a final solution to this case.”
A. An unaccepted offer of settlement ordinarily is not admissible evidence to show either the existence or amount of liability. Fed.R.Civ.P. 68; Fed.R.Evid. 408; Medtronic, Inc. v. Intermedics, Inc., 799 F.2d 734, 741, 230 USPQ 641, 645 (Fed.Cir.1986). The rule reflects the reality that permitting consideration of settlement offers as reflecting an admission of liability in the amount of the offer would seriously discourage parties from discussing settlement or making settlement offers. The law, however, favors settlement of litigation which reduces the burden on courts and counsel and mitigates the antagonism and hostility that protracted litigation leading to judgment may cause. See Bergh v. DOT, FAA, 794 F.2d 1575, 1577 (Fed.Cir.), cert. denied, — U.S. -, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States, 671 F.2d 1305, 229 Ct.Cl. 434 (1982).
The imposition by the court upon the parties of a settlement that the parties rejected is inconsistent with this principle. Indeed, the Sioux Tribe so recognized in its motion for summary reversal (p. 8, supra). Unless a case is settled with the consent of the parties, the duty of the court is to determine the merits and enter judgment accordingly. Where, as here, the court adopts a settlement as its judgment without consideration of the relevant evidence (see part II B infra), the court has failed to perform its obligations to determine the case on the basis of the evidence.
The Supreme Court dealt with a similar issue in United States v. Ward Baking Co., 376 U.S. 327, 84 S.Ct. 763, 11 L.Ed.2d *1051 743 (1964). There the government filed a civil suit charging the defendants with violating section 1 of the Sherman Act. After extensive settlement negotiations, the defendants filed with the court a proposed “consent” judgment that contained various provisions prohibiting them from engaging in the conduct that the suit challenged.
The government objected to the proposed judgment on the ground that it omitted two necessary items of relief. The district court, however, entered the defendants’ proposed judgment because it “provides all the relief to which the plaintiff would be entitled after the entry of a decree pro confesso against each defendant and after a trial on the allegations of this complaint.” Id. at 330, 84 S.Ct. at 766.
The Supreme Court vacated the judgment and remanded the case for trial. The Court stated that in view of the government’s allegations and the evidence in the record, “it cannot reasonably be assumed that the Government could not, at the trial, have introduced evidence justifying, in whole or in part, the relief sought.” Id. at 333, 84 S.Ct. at 768 (footnote omitted).
The Court held that
where the Government seeks an item of relief to which evidence adduced at trial may show that it is entitled, the District Court may not enter a “consent” judgment without the actual consent of the Government.
Id. at 334, 84 S.Ct. at 768-69.
The principle announced and applied in Ward Baking is equally applicable in the present case. The government here asserted that it had offsets totaling $65 million. Although the government offered to settle the case by applying $4.2 million in offsets, it was willing to make that concession only if the plaintiff in return agreed to terminate the litigation. There is no basis for concluding at this stage of the proceeding that, if the government went to trial, it could not establish offsets of more than $4.2 million. In these circumstances, the district court could “not enter a ‘consent’ judgment without the actual consent of the Government” (Ward Baking) — a consent that was not forthcoming in the face of the Sioux Tribe’s rejection of the settlement by most of the constituent tribes.
The fact that in Ward Baking there was no settlement at all (because the government has not agreed to the defendants’ proposed consent judgment), whereas in the present case counsel for both sides had agreed to a settlement, does not distinguish this case from Ward Baking. The critical point in both cases is the same: the trial court could not impose upon the parties a settlement to which they had not agreed. Although the Sioux Tribe’s lawyers had agreed to the settlement and had strongly recommended to their clients that they accept it, those facts did not justify the Claims Court’s imposing the settlement upon the Indians or upon the government, whose acceptance of the settlement was contingent upon its acceptance by the other side.
In addition to Ward Baking, we have found only three other cases in which a trial court entered as its judgment a proposed settlement to which the parties had not agreed; in all of them the courts took such action as a sanction for what the court regarded as improper conduct by a party. Bennett Box & Pallet Co., 218 Ct.Cl. 636, 638 (1978) (excessive discovery by government and inadequate responses by government to the plaintiff’s interrogatories); United States v. Armbruster, 446 F.Supp. 866 (S.D.N.Y.1977) (settlement imposed “for failure of the government to act promptly and fairly” upon a proposed settlement in a tax case to which trial counsel for both sides had agreed); White Mountain Apache Tribe v. United States, 6 Cl.Ct. 575 (1984) (settlement offer imposed by the Claims Court upon an Indian tribe as a sanction for lack of prosecution of its case and failure to comply with court orders), rev’d, 776 F.2d 1063 (Fed.Cir.1985). Whatever may be the correctness of those actions — an issue upon which we express no opinion — they are not relevant here, since the Claims Court stated that it was not “imposing the negotiated settlement offer ... as a sanction....”
*1052 B. The second ground of the Claims Court’s decision — that the settlement offer constituted “fair and equitable payment for the plaintiff’s historical claim” — also is an inadequate basis for imposing the settlement upon the parties. Since the government had not yet introduced the detailed evidence upon which it relies to establish particular offsets, there was no basis in the record upon which the Claims Court could determine that the settlement offer constituted “fair and equitable compensation for the Sioux tribal land ceded under the 1868 Treaty.” Indeed, this ruling bears a striking similarity to the district court’s conclusion in Ward Baking that the defendants’ proposed judgment there “provides all the relief to which the plaintiff would be entitled after the entry of a decree pro confesso against each defendant and after a trial on the allegations of this complaint,” 376 U.S. at 330, 84 S.Ct. at 766—a conclusion the Supreme Court held could not be reached without a trial.
Rule 52(a) of the Rules of the Claims Court, which in its pertinent language is identical to Rule 52(a) of the Federal Rules of Civil Procedure, provides that “[i]n all actions tried upon the facts, the court shall find the facts specifically” and that “findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous____” The Claims Court decision in this case, which resolved factual disputes regarding the amount of offsets to which the government was entitled, did not comply with this requirement for findings of fact. Moreover, in the absence of record evidence against which the court’s finding could be evaluated, we have no basis for determining whether the finding is clearly erroneous.
In Ward Baking, the Supreme Court pointed out that “[i]t would be a rare case where all the facts necessary for a trial court to decide whether a disputed item of relief was warranted could be determined without an ‘opportunity to know the record.’ ” 376 U.S. at 331, 84 S.Ct. at 767. This is no less true where the trial court is required to determine the amount of money the plaintiff is entitled to recover. This is not that “rare case” in which the trial court could make that factual determination without the benefit of a full record.
C. The Claims Court found support for its action, as does the Sioux Tribe here, in the statement by the Court of Claims that “[t]here is a need for innovative handling and treatment, perhaps to devise new procedures that will end the delays that have plagued these cases for so many years.” Navajo Tribe of Indians v. United States, 601 F.2d 536, 540, 220 Ct.Cl. 360 (1979). The “innovative handling and treatment” involving “new procedures” to end the lengthy delays in these Indian Claims cases, which the Court of Claims encouraged the trial judges to develop, do not include the imposition of a settlement negotiated by counsel to which the parties did not agree.
III
In its notice of appeal, the Oglala Tribe appealed from the Claims Court order awarding final judgment “for the reason that the United States Claims Court unlawfully exceeded its authority by imposing the United States Government Settlement Offer on the Sioux Tribe of Indians and the Final Judgment is not supported by the evidence in the record.” In its opening 38-page brief, submitted by different counsel, the Oglala Tribe did not even discuss that issue but addressed other issues that the Claims Court had not decided. In its 29-page reply brief, the Oglala Tribe merely “concurred] with” the arguments in the government’s opening brief that the Claims Court improperly imposed the settlement upon the parties, and argued only the points it had raised in its opening brief.
The Oglala Tribe urges us to decide the following issues: (1) whether the tribe is entitled to withdraw from the case, (2) whether the Claims Court incorrectly construed certain provisions of the 1868 Treaty and the 1877 Act, and (3) whether the tribe authorized the attorneys who have represented it in this case for more than 35 *1053 years to litígate the issues under the 1868 Treaty that the Indian Claims Commission and the Court of Claims decided.
For the reasons given below, we decline to decide those issues.
The only issue open to the Claims Court under the 1980 Court of Claims remand was “to determine the merits of defendant’s claim for offsets....” Sioux Tribe, 616 F.2d at 494. The only issue the Claims Court decided in the judgment under appeal is that the proper amount of offsets is $4,200,000. The validity of that determination is the only issue before us and the only one we decide.
The issues the Oglala Tribe would have us decide were not raised before, or decided by, the Claims Court. We do not decide them.
IV
In vacating the judgment of the Claims Court and remanding for further proceedings, we are not suggesting that a complete trial on all of the offset issues will be required. We still urge the Claims Court to develop “innovative handling and treatment, perhaps to devise new procedures that will end the delays that have plagued these cases for so many years.” Navajo Tribe, 601 F.2d at 540.
For example, perhaps the issues requiring trial can be further narrowed through decision of the three remaining motions for summary judgment and the resolution of any additional summary judgment motions that may be filed. The government may be able to prepare and present summaries of the different categories of offsets it is urging and thus avoid the need for the introduction into evidence of vast quantities of details and minute records going back for more than a century. Finally, the parties may be able to stipulate the total dollar amount of various categories of offsets to which the government is entitled. If the parties can so stipulate, this may be action that counsel for the Sioux Tribe can take as part of the normal conduct of litigation without the necessity for obtaining the approval of their clients. Cf. Navajo Tribe, 601 F.2d at 538-39.
CONCLUSION
The judgment of the United States Claims Court is vacated, and the case is remanded for further proceedings in accordance with this opinion.
VACATED and REMANDED.