FRIEDMAN, Circuit Judge.
This is another, and hopefully the last, chapter in the lengthy saga of the attempt by the Sioux Indians under the Indian Claims Commission Act, 25 U.S.C. § 70 et seq. (1976), to recover damages for the land they ceded to the United States under an 1868 treaty.
The present appeal is by two of the Sioux tribes from the dismissal by the United States Claims Court of their motion for relief from a judgment awarding the Sioux Indians approximately $40 million. Sioux Tribe of Indians v. United States, 14 Cl.Ct. 94 (1987). The appellants, however, do not challenge the award as inadequate. Instead, they contend that their counsel of record acted without authority in obtaining the award on their behalf. They seek a vacation of the judgment making the award and a dismissal of the case with respect to them. Their purpose in seeking this action is to facilitate their attempt to obtain a return of the land they ceded to the government 120 years ago.
*277 We hold that the Claims Court did not abuse its discretion in denying the appellants’ motion for relief from the judgment, and affirm that ruling.
I
A. The background facts have been fully set forth in earlier opinions of this court and our predecessor court, Cheyenne River Sioux Tribe v. United States, 806 F.2d 1046 (Fed.Cir.1986), cert, denied sub nom., Oglala Sioux Tribe v. United States, 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987), United States v. Sioux Tribe, 222 Ct.Cl. 421, 616 F.2d 485 cert. denied sub nom., Yankton Sioux Tribe v. United States, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980), Sioux Tribe v. United States, 205 Ct.Cl. 148, 500 F.2d 458 (1974), and are briefly summarized here.
This case was filed in 1950 with the Indian Claims Commission (Commission). 25 U.S.C. § 70 et seq. (1976). Because the Sioux Tribe of Indians has not existed as an entity since 1890, the suit was brought by the eight present-day Sioux reservation tribes in a representative capacity. 25 U.S.C. § 70i (1976). After protracted proceedings, the Commission found that the value of the land at its cession in 1869 was $45,685,000. The Commission held that the United States could not deduct any of the permissible statutory offsets because of the government’s dishonorable dealings with the Sioux. The Commission awarded the Sioux $43,949,700. Sioux Tribe v. United States, 42 Ind.Cl.Comm. 214, 232, 257 (1978).
On the government’s appeal, which was limited to the offsets issue, the Court of Claims held that “the Commission erred in refusing to consider reducing the award by any payments on the claim or gratuitous offsets.” United States v. Sioux Tribe, 222 Ct.Cl. 421, 616 F.2d 485, 492 (1980). The court remanded the case to its Trial Division, the successor to the Commission, “to determine whether the award should be reduced” by “determinpng] the merits of defendant’s claim for offsets based on both alleged payments on the claim and gratuitous offsets.” 616 F.2d at 494.
Following the remand, attempts to settle the case were unsuccessful. The government offered to settle the offset issue for $4,200,000, but a majority of the tribes rejected the offer either explicitly or implicitly. See Cheyenne River Sioux Tribe, 806 F.2d at 1048-49. Ultimately the Claims Court, the successor to the Trial Division of the Court of Claims, concluded in 1985 that the litigation had become “an uncontrolled quagmire” and that “[t]he simple fact that four of the reservation tribes are refusing to accept any settlement or award of this Court, which does not include the return of their land, is indicative of the plaintiff’s [sic] refusal to comprehend, after 35 years of litigation, that this Court can only award money judgments.” Sioux Tribe of Indians v. United States, 8 Cl.Ct. 80, 85-86 (1985). The court accordingly
terminate[d] this litigation and ... award[ed] the plaintiff $39,749,700 as fair and equitable compensation for its claims. This amount reflects the parties’ counsels’ negotiated settlement agreement as to what they considered to be fair and equitable compensation for the plaintiff’s claims, and, more importantly, it represents an amount that this Court believes constitutes fair and equitable compensation for the plaintiff’s historical claims, after taking into consideration the plaintiff's interlocutory land valuation award of $43,949,700 and the Federal Government’s offset claims of some $65 million.
8 Cl.Ct. at 81.
We held that the Claims Court improperly had imposed upon the parties a settlement to which they had not consented, vacated the award of $39,749,700, and remanded the case to the Claims Court “for further proceedings in accordance with this opinion.” 806 F.2d at 1053. We further stated, however:
In vacating the judgment of the Claims Court and remanding for further proceedings, we are not suggesting that a complete trial on all of the offset issues will be required____
*278 ... [T]he parties may be able to stipulate the total dollar amount of various categories of offsets to which the government is entitled. If the parties can so stipulate, this may be action that counsel for the Sioux Tribe can take as part of the normal conduct of litigation without the necessity for obtaining the approval of their clients.

Id.

B. On July 29, 1987, seven months later, the parties filed in the Claims Court a Stipulation of Facts “regarding the offsets of the government in this case” and a joint motion “to enter judgment in accordance with the Stipulation of Facts.” The stipulation recited that it was made “pursuant to the suggestion of the Federal Circuit Court of Appeals.”
In paragraph 8 of the stipulation, the parties “stipulate[d] that the United States is entitled to the following offsets:” it then listed five categories of offsets totaling $3,703,892.98. The stipulation provided that “[t]he parties intend that approval of this Stipulation of Facts by the Claims Court shall constitute its determination that the categories of offsets set forth in paragraph 8 are allowable as a matter of law” and that “[u]pon such approval by the Court, a final judgment may be entered in the sum of $40,245,807.02, which represents the gross award of $43,949,700 less payments on the claim of $3,703,892.98 in favor of the Sioux Tribe of Indians by its representatives [the names of the eight Sioux Tribes followed].” The stipulation also stated that it would be “null and void” unless approved by the Claims Court.
The Motion for Entry of Judgment stated: “The parties move the Court to approve the Stipulation of Facts and to enter judgment in accordance with the Stipulation of Facts in the amount of $40,245,-807.02 which represents the gross award of $43,949,700 less stipulated offsets of $3,703,892.98.” Both the Stipulation of Facts and the Joint Motion for Entry of Judgment were signed by counsel of record “For the Plaintiffs,” Arthur Lazarus, Jr., and by a Department of Justice attorney “For the Defendant.” In accordance with the motion, the Claims Court the following day entered judgment that “plaintiff recover of and from the United States the sum of $43,949,700 less stipulated offsets of $3,703,892.98 for a net amount of $40,245,-807.02.”
C. Two months later, on September 28, 1987, the appellants, the Oglala Sioux Tribe and the Rosebud Sioux Tribe, filed a motion for relief from the judgment. The motion, filed pursuant to Rule 60(b) of the Rules of the Claims Court, which parallels Rule 60(b) of the Federal Rules of Civil Procedure, stated that
[t]he plaintiff Indian tribes have not given their consent to the stipulation on which the judgment is based. The attorneys who appeared on behalf of plaintiffs and agreed to the stipulation and entry of judgment took these actions without notice to or approval of plaintiffs as required by law. As a result, the judgment is void. If permitted to stand, the judgment would damage and impair substantial rights and interests of the plaintiff tribes.
The Claims Court denied the motion. The court noted:
At no time before this Court entered judgment did any one of the eight reservation tribes raise any legal or factual objection to the Federal Circuit’s suggestion that counsel may be able to stipulate the facts in this case, or to this Court’s endorsement and encouragement of the Federal Circuit’s suggestion. Nor at any time prior to judgment has any one of the reservation tribes moved for leave to substitute counsel.
14 CLCt. at 100.
The court stated that the Indians argued that “the attorney(s) of record in this case had no authority to enter into a Stipulation of Facts which, when approved by this court, formed the basis for the court to enter the final judgment herein” and that
the Stipulation of Facts was really a settlement agreement which was not authorized by the [appellant Sioux] tribes. Moreover, they assert that substantial legal, moral, and political interests of the *279 tribes would be harmed if the judgment is not vacated.

Id.

In a lengthy memorandum order the court rejected these contentions.
The court first ruled that the judgment was not a settlement agreement. The court stated that the stipulation “provided, in substance, that if the Court determined the listed categories of offsets to be allowable as a matter of law, then the dollar amounts of those offsets were agreed upon by the parties to total $3,703,892.98 as a matter of fact.” Id. at 102 (footnote omitted). The court further stated:
The Stipulation of Facts in this case led to the entry of a final judgment by the Court. This result followed not because judgment was entered upon the stipulation, but rather because, after the Court’s ruling as to the offsets allowable as a matter of law and the Court’s subsequent approval of the agreed offset amounts, no issue remained in the case to litigate. It would be bizarre indeed if the Court were to allow this case to remain open and on its docket when nothing more needed to be resolved. Thus, the Stipulation of Facts did no more than eliminate the need for trial on a finite, easily resolvable factual question — the dollar amount of described Government expenditures — and in no way effected a compromise or settlement of the overall 1868 Treaty claim.
14 Cl.Ct. at 103.
The court then rejected the argument that “the attorney(s) of record for the plaintiff tribe were not authorized to represent them [the appellant tribes] in this litigation, and thus they were not authorized to enter into the Stipulation of Facts with the Government in this case.” Id. The court further stated that
neither movant party has ever asked this Court to substitute new counsel, or sought to enter a separate appearance, or otherwise attempted to assert through legal process a position independent of the Sioux Tribe and of the six other Sioux reservation tribes in these proceedings. It is too late in the game to do this now. Having failed over a 37-year period to raise any substantive objection to what was happening, the Oglala Sioux Tribe and the Rosebud Sioux Tribe now are precluded and estopped from initiating their belated attack upon the judgment of this Court, an attack which the Sioux Tribe and the six other Sioux tribal representatives do not join.
14 Cl.Ct. at 104-05 (footnotes omitted).
Finally, the court rejected the tribe’s argument that “substantial legal, moral and political interests of the tribes would be harmed if the judgment is not vacated.” 14 Cl.Ct. at 105. The court noted that “[t]he movants simply want their ancestral land returned.” Id. at 105. The court declined to vacate its judgment on this ground and stated that “[i]t is not for this Court to say whether the Congress of the United States will ever decide to return some or all of the Sioux land.” Id.
II
“The grant or denial of a motion for relief from judgment is discretionary, and the standard of review therefore is whether the trial court abused its discretion.” United States v. Atkinson, 748 F.2d 659, 660 (Fed.Cir.1984) (citation omitted). The Claims Court did not abuse its discretion in denying the appellant tribes’ motion for relief from the judgment awarding the Sioux Tribe of Indians approximately $40 million.
A. The Claims Court correctly ruled that the Stipulation of Facts and the Joint Motion to Enter Judgment in Accordance with the Stipulation, on the basis of which the court entered its judgment, were not a settlement agreement which required consent of the appellant tribes.
Since 1980, the only remaining issue in this case had been the amount of offsets, if any, by which the government would reduce the initial award of $43,949,700 to the Sioux. In our 1986 decision vacating the imposition of the unconsented settlement on the parties, we stated that if the parties could “stipulate the total dollar amount of various categories of offsets to which the *280 government is entitled ... this may be action that counsel for the Sioux Tribe can take as part of the normal conduct of litigation without the necessity for obtaining the approval of their clients.” 806 F.2d at 1053.
The stipulation recited that it was made pursuant to that suggestion. The parties did precisely what our suggestion contemplated — stipulated the dollar amount of the various categories of offsets to which the government was entitled. The stipulation left it to the Claims Court to determine whether those offsets “are allowable as a matter of law” and provided that unless the Claims Court ruled that they were, the Stipulation of Facts would be “null and void.”
We agree with the Claims Court that entering into such a stipulation of facts was “exactly the type of determination (i.e., analysis of the evidence) that attorneys can undertake ‘as part of the normal conduct of litigation without the necessity for obtaining the approval of their clients.’ ” 14 Cl.Ct. at 103 (citing Cheyenne River Sioux Tribe, 806 F.2d at 1053). See Lipp v. National Screen Serv. Corp., 290 F.2d 321, 322 (3d Cir.), cert. denied, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961) (“There is no doubt in our minds that this arrangement to expedite this litigation to final conclusion was well within the authority of the lawyers who participated.”); cf. United States v. Texas, 523 F.Supp. 703, 711 (E.D.Tex.1981) (“The entering into evidentiary stipulations, before or during trial, falls squarely within an attorney’s sphere of authorized conduct.”)
The appellant tribes contend that the joint motion for entry of judgment converted this factual stipulation into a settlement of the case. Once the parties had agreed upon the amount of offsets, however, there was no remaining issue concerning the amount the Sioux Tribe of Indians was entitled to recover. They were entitled to receive the difference between the $43,949,-700 originally awarded and the stipulated offsets. The entry of the judgment for the amount of the difference was a ministerial act which the Claims Court would have performed even without the joint motion for entry of judgment. As that court noted, “[i]t would be bizarre indeed if the Court were to allow this case to remain open and on its docket when nothing more needed to be resolved.” 14 Cl.Ct. at 103.
B. We also agree with the Claims Court that counsel of record for the Sioux Tribe of Indians had authority to enter into the Stipulation of Facts that resulted in the final judgment.
As the Claims Court noted, for more than 30 years counsel vigorously and effectively pressed this case on behalf of the Sioux Indians. For most of that time, the appellant tribes neither objected to the way counsel handled the litigation nor questioned his authority to represent them.
In 1980, Mr. Lazarus moved to withdraw as counsel for the Oglala Sioux Tribe, and in 1985, he moved to withdraw temporarily for the Oglala Sioux Tribe and the Cheyenne River Sioux Tribe, both of which had appealed the Claims Court 1985 judgment. On neither occasion did the tribes respond to counsel’s motion. The Court of Claims denied the 1980 motion without prejudice and stated that the “motion may be renewed, however, at such time that the Oglala Sioux Tribe seeks by appropriate motion to make a proper substitution of counsel.” The Claims Court denied the 1985 motion without prejudice because the case “requires that competent, experienced and knowledgeable counsel remain as attorney of record, until there has been an appropriate attorney substitution of counsel.”
•In November 1987, two months after they had filed their motion for relief from the judgment, the appealing tribes filed a motion to change their attorney of record. After the Claims Court denied the motion for relief from the judgment, it noted that the motion to change attorneys was moot.
The attorneys of record had been serving under contracts with each of the eight Sioux Tribes, originally entered into more than 30 years ago, which the Secretary of the Interior initially had approved and which were renewed at periodic intervals. The appellant tribes contend that because they did not renew their contracts with *281 their attorneys of record in the late 1970’s and early 1980’s, the authority of those attorneys to act for them in this case lapsed, and that those attorneys no longer represented them and therefore could not sign the stipulation of facts in their behalf.
As noted, this case had been vigorously litigated for more than 30 years, and the Sioux had prevailed on a number of difficult issues. By 1980, the only question still unresolved was the amount of the government’s offsets. We agree with the Claims Court that in these circumstances, the appellant tribes were required to do something more than not renew their attorney’s contracts if they wished to terminate their attorneys’ authority to represent them. They should affirmatively and formally have advised the attorneys that they were terminating the attorney-client relationship, and then should have promptly moved in the Court of Claims to substitute new counsel to represent them. See Rule 81(d) of the Rules of the Claims Court.
The Claims Court was fully justified in refusing to terminate the authority of the attorneys who had been handling this complex litigation for 30 years and were at the point of successfully completing it, unless and until the appellant tribes moved to substitute new counsel who could continue to handle this case without significant delay.
C. Finally, the appellant tribes contend that the judgment should be vacated to give them the opportunity to seek dismissal as to them and presumably to deny them the benefits of the $40 million award in favor of the Sioux Tribe of Indians.
Since this suit was brought in a representative capacity by the eight Sioux tribes to cover the damages the Sioux Nation had suffered as a result of the 1868 Treaty, the elimination of the two appellant tribes as plaintiffs in the suit would not change the judgment in favor of the Sioux Tribe of Indians. In any event, if the two appellant tribes wanted to be eliminated as parties plaintiff, they had ample opportunity to take appropriate action to accomplish that result during the many years in which this case was vigorously pressed on behalf of all eight Sioux tribes and during which they apparently acquiesced in, and approved of, their attorneys’ endeavors in their behalf. As the Claims Court justifiably concluded: “It is too late in the game to do this now.”
CONCLUSION
The order of the United States Claims Court denying the appellant tribes’ motion for relief from the judgment is
AFFIRMED.
COSTS
The parties to bear their own costs.