NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**STEPHANIE DIMASI,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

_____

2022-1854

_____

Appeal from the United States Court of Federal Claims in No. 1:15-vv-01455-AOB, Judge Armando O. Bonilla.

_____

Decided:  July 24, 2023

_____

STEPHANIE DIMASI, Melrose, MA, pro se.

CAROLINE D. LOPEZ, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, C. SALVATORE D'ALESSIO, LARA A. ENGLUND, CLAUDIA BARNES GANGI, HEATHER LYNN PEARLMAN, ABBY CHRISTINE WRIGHT.

J. KAIN DAY, Munger, Tolles & Olson LLP, Washington,

DC, argued for amici curiae J. Kain Day, Ginger Anders. Also represented by GINGER ANDERS.

————————————

Before MOORE, *Chief Judge*, PROST and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Stephanie DiMasi received a seasonal influenza vaccination on December 4, 2012. In late 2015, through counsel, she timely filed a petition in the U.S. Court of Federal Claims (Claims Court) under the National Vaccine Injury Compensation Program (Vaccine Act), Pub. L. No. 99-660, tit. III, 100 Stat. 3755 (1986) (codified at 42 U.S.C. §§ 300aa-10 through -34), seeking compensation for conditions assertedly caused by the vaccine. The Claims Court special master, prompted by pre-vaccination medical records and expert opinion suggesting that the conditions pre-existed the 2012 vaccination, directed the parties to address the elements of a claim of significant aggravation, *i.e.*, a claim that the vaccine, even if it did not cause the initial onset of the conditions, made the conditions significantly worse. In response, counsel for Ms. DiMasi first failed, then expressly declined, to present such an alternative claim. With the only live claim being that the 2012 vaccination caused the initial onset of the conditions, the special master then denied Ms. DiMasi's petition for compensation, a denial that became a final judgment.

Approximately nine months later, Ms. DiMasi, now pro se, sought to reopen her case. Of importance here, she made two challenges. First, she argued that her counsel and the special master made a mistake about precisely when, post-vaccination, her critical symptoms first appeared (immediately or four days later) and that the mistake infected the adjudication of the initial-onset claim, the only claim presented. Second, she argued that her counsel never informed her of the possibility of filing a significant-

aggravation claim or obtained her consent when deciding, on his own, not to present such a claim. The special master, treating her filings as a motion for relief from judgment under Claims Court Rule 60(b), denied Ms. DiMasi's motion, reasoning (as her second challenge) that her former counsel's decision not to press a significant-aggravation claim was a tactical choice that he had the authority to make within the attorney–client relationship. The Claims Court affirmed.

Ms. DiMasi timely petitioned this court for review, and the matter was briefed by her (pro se) and by the Secretary. Seeking additional assistance in clarifying both the facts and the relevant law, we then appointed amici to develop arguments in support of Ms. DiMasi's appeal. Amici filed a brief doing so, the Secretary responded, amici replied, and we heard oral argument.

We now hold that Ms. DiMasi is not entitled to relief based on her first challenge. As relevant here, although Rule 60(b)(1) authorizes relief from judgment for a mistake, we conclude that the asserted mistake of counsel and the special master—a mistake, based on assertedly inaccurate post-vaccination records, about the precise post-vaccination timing of manifestation of Ms. DiMasi's critical symptoms—was harmless as to the initial-onset claim. We read the special master's opinion denying Rule 60(b) relief to have determined that the finding of pre-vaccination onset rested independently on the pre-vaccination medical records and expert testimony based on those records. There has been no adequate showing that correcting the asserted timing mistake about post-vaccination symptom manifestation could reasonably have altered the determination based on the pre-vaccination records. We therefore affirm the denial of reopening of the initial-onset claim.

We further hold, however, that Ms. DiMasi is entitled to relief under Rule 60(b)(6) on her second challenge in the extraordinary circumstances of this case. Ms. DiMasi's

then-counsel disclaimed any significant-aggravation claim without securing consent from his client, despite the special master's sua sponte order calling for briefing on significant aggravation and identifying the evidence of pre-vaccination existence of the conditions at issue that made a significant-aggravation claim possibly of crucial importance to Ms. DiMasi receiving any compensation. Later, after the adverse judgment, then-counsel told Ms. DiMasi that the special master had effectively rejected a significant-aggravation claim on the merits, even though such a claim was never asserted or adjudicated. We deem this combination of facts to constitute circumstances that are among the rare ones in which the client is not bound by a choice of counsel. We therefore partly reverse the denial of Ms. DiMasi's motion for relief from judgment, and we remand the case for further proceedings limited to setting aside the underlying judgment to permit assertion and adjudication of a significant-aggravation claim.[1]

I

A

Before receiving the 2012 vaccination, Ms. DiMasi reported experiencing cardiac and neurological symptoms. For example, on March 19, 2008, Ms. DiMasi was admitted to the hospital, reporting "near syncope and premature ventricular contractions." Appx. 22.[2] Later, in August 2009, Ms. DiMasi visited neurologist Dr. Fischer, who recorded that she "peripheral neuropathy, palpitations, premature ventricular contractions, and migraine headaches."

---

[1]    The court thanks appointed amici for commendably developing the assigned position in briefs and at oral argument.

[2]    "Appx." refers to the Corrected Appendix, Fed. Cir. Dkt. No. 24. "SAppx." refers to the Corrected Confidential Joint Supplemental Appendix, Fed. Cir. Dkt. No. 69.

*Id.* Ms. DiMasi was again admitted to the hospital in November 2009 for "near syncope." *Id.* Two years later, after receiving a flu vaccine in 2011, she reported "mild tachycardia, lightheadedness, and dizziness for 30 minutes." *Id.* And at a follow-up appointment with Dr. Fischer in April 2012, Ms. DiMasi reported feeling "'intermittent tingling behind her knees and upper calves, particularly when she sits for prolonged periods of time.'" Appx. 23.

On December 4, 2012, Ms. DiMasi received the flu vaccine relevant to this litigation. *Id.* The next day, she visited her primary-care provider, Dr. Sen, complaining of "some tachycardia and and a 'weird' sense of throat tightening." *Id.* Dr. Sen, noting that Ms. DiMasi had a "history of premature ventricular contractions" and that her current EKG showed different results, "transferred [her] to the hospital via ambulance for further testing." *Id.* She was discharged the following morning with a diagnosis of tachycardia, but Ms. DiMasi returned to the hospital on December 8, 2012, "complaining of neurological symptoms in her left leg." *Id.* She was then discharged "with a diagnosis of elevated blood pressure." *Id.* Two days later, Ms. DiMasi returned to Dr. Sen, reporting "dizziness, left leg neurological symptoms, weakness, and palpitations." *Id.*

On December 19, 2012, Ms. DiMasi saw neurologist Dr. Chen, who noted in his record of the visit that, "[i]mmediately after the [2012] flu shot[,] she had a sensation of dizziness, tachycardia, shakiness, generalized weakness and tingling behind the right knee." Appx. 24. Dr. Chen opined in that record that "it [is] 'hard to explain what could cause such a rapid response.'" *Id.* Ms. DiMasi followed-up with Dr. Fischer on December 27, 2012, where she reported, according to Dr. Fischer's notes, "an 'immediate response' after the vaccination, 'within a few minutes,' of a rapid heart rate, dizziness, tingling and numbness rising from left leg up her back." *Id.* Dr. Fischer was likewise puzzled by Ms. DiMasi's presentation, stating that, "given the unilateral nature of the symptoms, it is somewhat difficult to

understand how the injection could result in these symptoms." *Id.*

Ms. DiMasi continued to seek treatment for several years, with medical providers providing various diagnoses. Appx. 24–25. The record before this court, from the Rule 60(b) proceedings, contains Ms. DiMasi's statement that, in the 18 months following her 2012 vaccination, she visited medical providers 72 different times, a far higher rate than before the vaccination. *See* Amicus Br. at 11; SAppx. 217. It also contains Ms. DiMasi's description of how her "life . . . changed" significantly after the vaccination. Amicus Br. at 16 n.5; SAppx. 184–85.

B

1

On December 2, 2015, just under three years after her 2012 vaccination, Ms. DiMasi, through her then-counsel, filed a Vaccine Act petition for compensation in the Claims Court, alleging injuries caused by the 2012 flu vaccine. Under the statute, Ms. DiMasi's petition was referred to a special master for adjudication of whether she was entitled to compensation, 42 U.S.C. § 300aa-12(d)(3), with review available in the Claims Court, *see id.* § 300aa-12(e), and then in this court, *see id.* § 300aa-12(f); 28 U.S.C. § 1295(a)(3). The special master identified the (agreed on) conditions at issue as small fiber neuropathy, with related postural orthostatic tachycardia syndrome (POTS) and mild autonomic failure (plus baroreflex failure). Appx. 25. That characterization (like the shorthand, "small fiber neuropathy and POTS," Appx. 27; *see* Appx. 25 & n.5) is not subject to material dispute here.

As now relevant, although influenza vaccines are listed in the vaccine injury table—a compilation of specified vaccines and specified corresponding medical conditions, *see* 42 U.S.C. § 300aa-14(a); 42 C.F.R. § 100.3(a)—the conditions at issue for Ms. DiMasi are not listed in the table for

her flu vaccine.  42 C.F.R. § 100.3(a)(XIV) (listing anaphylaxis, within four hours of vaccine administration; shoulder injury, within 48 hours; vasovagal syncope, within one hour; and Guillain-Barré Syndrome, between 3 and 42 days).  For her asserted non-table conditions, Ms. DiMasi therefore had to show, by a preponderance of the evidence, that the vaccine *either* "caused" *or* "significantly aggravated" the conditions.  42 U.S.C. § 300aa-11(c)(1)(C)(ii); *see W.C. v. Secretary of Health & Human Services*, 704 F.3d 1352, 1357 (Fed. Cir. 2013); *Sharpe v. Secretary of Health & Human Services*, 964 F.3d 1072, 1078 (Fed. Cir. 2020). "Significant aggravation" is as "any change for the worse in a pre[-]existing condition which results in markedly greater disability, pain, or illness accompanied by substantial deterioration of health."  42 U.S.C. § 300aa-33(4); *see Locane v. Secretary of Health & Human Services*, 685 F.3d 1375, 1379 (Fed. Cir. 2012).

On September 19, 2016, the Secretary filed a report under the Claims Court's Vaccine Rule 4(c) recommending against compensation, citing both Ms. DiMasi's pre-vaccination medical records and post-vaccination records to reject the petition's assertion of causation by the 2012 vaccination.  Appx. 25; *see* SAppx. 5–13.  Expert reports followed.  In a March 2017 report, Ms. DiMasi's expert, Dr. Kinsbourne, "concluded that the influenza vaccine caused Ms. DiMasi to develop small fiber neuropathy within a day," without addressing "Ms. DiMasi's pre-vaccination medical history that was discussed in the" Secretary's September 2016 report, Appx. 25; SAppx. 17–26, though he later addressed the pre-vaccination medical history in May 2018, Appx. 26; SAppx. 38–40, when responding to the intervening reports of the Secretary's expert, Dr. Leist, in October 2017 and January 2018, Appx. 25–26; SAppx. 27–37. "Dr. Leist detailed Ms. DiMasi's pre-vaccination history back to 2008 noting recurring episodes of syncope/near syncope, palpitations, and tachycardia" and "concluded that Ms. DiMasi had small fiber neuropathy prior to the

influence vaccination." Appx. 25; SAppx. 27–28 (recounting pre-vaccination records), 28–34 (recounting post-vaccination records, including Chen and Fisher records, but continuing to 2016), 35 (paragraph drawing conclusion of pre-vaccination small fiber neuropathy based on pre-vaccination records). That conclusion rejected the initial-onset claim, and Dr. Leist added that he also "den[ied] that the influenza vaccination significantly aggravated Ms. DiMasi's pre-existing small fiber neuropathy." Appx. 25–26; *see* SAppx. 35, 37.

On October 3, 2018, Ms. DiMasi's counsel requested an adjudication on the existing record, without oral testimony, and the next day, the special master issued an order to "guide the parties" in the briefs they agreed to file. SAppx. 41; Appx. 26; Amicus Br. at 16. In that order, the special master, based on Dr. Leist's opinions that Ms. DiMasi's small fiber neuropathy pre-existed the vaccination and that the vaccination did not significantly aggravate the condition, informed the parties that they "should address all the elements of a significant[-]aggravation case." Amicus Br. at 16–17; *see* SAppx. 43. The special master stated the elements of a significant-aggravation claim and "provided specific guidance on how each element should be addressed." Amicus Br. at 17; SAppx. 43–48.

Nevertheless, when counsel, on November 5, 2018, filed the scheduled brief urging a ruling on the record for Ms. DiMasi, he did not present or mention a significant-aggravation claim, arguing only the initial-onset claim, *i.e.*, that the 2012 vaccine itself caused the conditions at issue. SAppx. 49–64. In a response filed March 4, 2019, the Secretary observed that "a discussion of [a significant-aggravation] claim is . . . relevant to this case," SAppx. 75, and addressed the issue on the merits, SAppx. 75–81, though a full record had not been made on such a claim. On July 7, 2019, Ms. DiMasi, through counsel, filed an amended motion for a ruling on the record that her neuropathy and POTS "were 'caused-in-fact' by her [2012] flu vaccination."

SAppx. 84.  In the amended motion, counsel expressly disclaimed a significant-aggravation claim, stating: "[Ms. DiMasi] does not allege a significant[-]aggravation claim in her [p]etition."  SAppx. 104; Amicus Br. at 17.

On November 7, 2019, the special master denied Ms. DiMasi's petition for compensation.  *DiMasi v. Secretary of Health & Human Services*, No. 15-1455V, 2019 WL 6878732 (Fed. Cl. Nov. 7, 2019); Appx. 21.  The special master first noted that, because Ms. DiMasi "d[id] not allege a significant[-]aggravation claim," Appx. 21, the only dispute was "when Ms. DiMasi first developed [her] conditions," Appx. 27.  The special master then found

> that the evidence supports Ms. DiMasi having symptoms related to her small fiber neuropathy and POTS before the . . . 2012 influenza vaccination.  The presence of problems before [the] vaccination could serve as a predicate for an alternative cause of action—that the vaccination significantly aggravated the pre-existing problem.  However, Ms. DiMasi [through counsel] explicitly stated that she is not pursuing a significant[-]aggravation claim.  Thus, the undersigned will not address whether Ms. DiMasi's pre-existing symptoms worsened after the vaccination.

Appx. 29 (internal citation omitted).

Ms. DiMasi had 30 days to seek Claims Court review of the special master's ruling.  *See* 42 U.S.C. § 300aa-12(e)(1).  On November 11, 2019, four days after the special master's decision, Ms. DiMasi's counsel informed her of the decision.  Counsel stated that the special master "believed that . . . the small fiber neuropathy . . . started before the [2012] vaccination."  SAppx. 151.  Even though the special master did not decide significant aggravation, counsel also stated that the special master "believed that . . . [t]he onset of the tachycardia after the flu shot was too short to be the result

of a significant aggravation of small fiber neuropathy." *Id.*; Amicus Br. at 65.

The record reveals what was at least a failure of communication between counsel and Ms. DiMasi regarding whether to seek Claims Court review. *See* Appx. 197–99. And counsel, believing that "filing a motion for review [in the Claims Court] would have been inappropriate and baseless," Appx. 198, did not in fact seek Claims Court review. Because no motion for review was filed, the Claims Court entered final judgment on December 11, 2019, dismissing Ms. DiMasi's petition for compensation. *See* 42 U.S.C. § 300aa-12(e)(3).

2

On September 15, 2020, well within one year of the final judgment, Ms. DiMasi sent a letter (along with medical records and other attachments) to the special master, requesting that she be allowed to proceed pro se and that her case be reopened because of, among other things, deficiencies in her (now) former counsel's representation. Appx. 31. Ms. DiMasi's former counsel submitted a responsive affidavit. Appx. 153–56. Ms. DiMasi, allowed to proceed pro se, responded to her former counsel's affidavit, the Secretary opposed her request for reopening, and Ms. DiMasi replied. *See* Appx. 181; SAppx. 142, 146. On June 3, 2021, the special master denied Ms. DiMasi's request to reopen the case, treating it as a motion for relief from judgment under Claims Court Rule 60(b). Appx. 157, 182. But when, a few weeks later, Ms. DiMasi sought reconsideration, *see* Appx. 172, 182; SAppx. 188, the special master vacated the June 3 denial and requested supplemental briefing, Appx. 16, 182. Thereafter, the Secretary made a supplemental filing, and Ms. DiMasi sought leave to file additional material. Appx. 16 n.2, 82; SAppx. 211, 225.

Ms. DiMasi's submissions seeking relief from the 2019 judgment presented several challenges, but only two of them warrant discussion here, given the demanding

standards for Rule 60(b) relief.  First, Ms. DiMasi asserted the existence of a fundamental misunderstanding about the facts regarding the precise timing of the emergence of her symptoms evincing small fiber neuropathy and related POTS, a misunderstanding that was based on asserted inaccuracies in Drs. Chen's and Fischer's reports and that, she alleged, infected her counsel's submissions and, eventually, the special master's rejection of the initial-onset claim for compensation.  *See, e.g.*, Appx. 31.  Second, Ms. DiMasi sought relief from the judgment on the ground that counsel had violated fundamental duties to her in disclaiming an in-the-alternative significant-aggravation claim without her informed consent, a claim that was never presented or adjudicated, despite the special master's order calling for it to be addressed.  *See, e.g.*, Appx. 32.[3]

On November 10, 2021, the special master denied Ms. DiMasi the requested relief.  Appx. 178–203.  The special

---

[3]    We have considered the other grounds that Ms. DiMasi raised in seeking Rule 60(b) relief, but we see no need for further discussion of such grounds.  For example, Ms. DiMasi challenged her then-counsel's decision not to seek direct review by the Claims Court of the special master's November 11, 2019 decision denying compensation.  The special master rejected this challenge.  Appx. 197–99.  We see no error in that rejection: Ms. DiMasi has not shown how she could have obtained relief on direct review, which would have been limited to the then-existing record and initial-onset claim.  Ms. DiMasi also unsuccessfully challenged the special master's interpretation of the prevaccination medical evidence itself, Appx. 192–93; *see* Appx. 28, but we see no showing of error in that regard that meets the demanding standards of Rule 60(b).  To the extent that Ms. DiMasi has, in her present appeal, mentioned other challenges she made before the special master, we see no need for further discussion.

master rejected Ms. DiMasi's challenge to the 2019 denial of the initial-onset claim—the challenge focused on the asserted mistake regarding precisely when her pertinent symptoms began after the 2012 vaccination (immediately or after a few days)—pointing to the pre-vaccination medical records, and Dr. Leist's testimony about them, as establishing pre-vaccination onset of the conditions at issue. Appx. 194. The special master also rejected Ms. DiMasi's challenge to her former counsel's decision not to raise a significant-aggravation claim, concluding that counsel's decision was "tactical" and properly within the scope of his authority under the principles governing the attorney–client relationship. Appx. 197.

On December 10, 2021, Ms. DiMasi timely filed a motion for review with the Claims Court. *See* 42 U.S.C. § 300aa-12(e)(1). The Claims Court denied the motion on April 4, 2022, finding no reversible error in the special master's denial of Ms. DiMasi's Rule 60(b) motion. *See DiMasi v. Secretary of Health & Human Services*, No. 15-1455V, 2022 WL 1153477 (Fed. Cl. Apr. 4, 2022); Appx. 15.

C

Ms. DiMasi, still proceeding pro se, timely petitioned this court for review, properly invoking our jurisdiction under 28 U.S.C. § 1295(a)(3) and 42 U.S.C. § 300aa-12(f). On December 19, 2022, we issued an order indicating the need for additional assistance in resolving the appeal. Fed. Cir. Dkt. 37. We appointed amici on January 3, 2023, and proceeded to receive a new, full round of briefs and oral argument from amici counsel and counsel for the Secretary, which provided the desired assistance.

II

Under the Vaccine Act, we review a decision of the special master, where that decision has been sustained by the Claims Court (as here), "under the same standard" that the Claims Court uses. *Rodriguez v. Secretary of Health &*

*Human Services*, 632 F.3d 1381, 1383–84 (Fed. Cir. 2011). Specifically, we must set aside the decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B); *see Avera v. Secretary of Health & Human Services*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).

We review here not the special master's November 2019 denial of compensation but the special master's November 2021 decision to deny relief from judgment under Claims Court Rule 60(b), applying standards elaborated in cases interpreting the identical Rule 60(b) of the Federal Rules of Civil Procedure (which governs in district courts). *Progressive Industries, Inc. v. United States*, 888 F.3d 1248, 1253 n.4 (Fed. Cir. 2018); *Information Systems & Networks Corp. v. United States*, 994 F.2d 792, 794 n.3 (Fed. Cir. 1993)). "The grant or denial of a motion for relief from judgment is discretionary, and the standard of review therefore is whether the trial court abused its discretion." *Sioux Tribe of Indians v. United States*, 862 F.2d 275, 279 (Fed. Cir. 1988) (quoting *United States v. Atkinson*, 748 F.2d 659, 660 (Fed. Cir. 1984)). "A court abuses its discretion when (1) its decision is clearly unreasonable, arbitrary or fanciful; (2) the decision is based upon an erroneous construction of the law; (3) its factual findings are clearly erroneous; or (4) the record contains no evidence upon which the [trial] court could have rationally based its decision." *Shell Oil Co. v. United States*, 896 F.3d 1299, 1306–07 (Fed. Cir. 2018) (internal quotation marks omitted) (alteration in original).

Rule 60(b) identifies several "grounds for relief from a final judgment, order, or proceeding." Claims Court Rule 60(b) (capitalization removed). Specifically, Rule 60(b) provides, in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final

> judgment, order, or proceeding for the following
> reasons:
>
>> (1) mistake, inadvertence, surprise, or ex-
>> cusable neglect;
>>
>> . . . or
>>
>> (6) any other reason that justifies relief.

*Id.* We address the two challenges that we have described,
one of which falls under Rule 60(b)(1), the other under
60(b)(6).[4]

### A

As relevant to Ms. DiMasi's first claim, Rule 60(b)(1)
authorizes relief from judgment for a "mistake." A "mis-
take," the Supreme Court has held, is a "factual misconcep-
tion or misunderstanding" or an "error of law or fact,"
whether by a party or by the court. *Kemp v. United States*,
142 S. Ct. 1856, 1862 (2022) (cleaned up). Here, we note

---

[4]    A motion for relief under Rule 60(b) must be made
within a reasonable time, which for grounds (1)–(3) may
not exceed one year. Claims Court Rule 60(c)(1). Here, Ms.
DiMasi filed her first letter requesting that her case be re-
opened on September 15, 2020, within one year of the De-
cember 11, 2019 judgment. The special master nowhere
found that Ms. DiMasi failed to make her Rule 60(b) filing
within a reasonable time. Nor did the Secretary argue un-
timeliness in opposing the Rule 60(b) motion. SAppx. 142–
45 (Oct. 7, 2020); *see also* Claims Court No. 15-w-1455, Dkt.
120 (July 19, 2021) (Secretary's response to Ms. DiMasi's
motion for leave to file additional materials). An untimeli-
ness objection is therefore forfeited. Moreover, when the
Secretary asserted untimeliness in one paragraph of his
supplemental brief here, he limited the assertion to the
Rule 60(b)(1) challenge regarding the initial-onset claim,
Sec'y Supp. Br. at 43, which we reject for other reasons.

only that Ms. DiMasi and amici have offered substantial support, including contemporaneous medical records, for the contention that a mistake was made (at least by counsel and the special master) regarding the precise timing of the manifestation of pertinent symptoms after the December 4, 2012 vaccination—specifically, that the reports of Drs. Chen and Fischer mistakenly state that Ms. DiMasi first experienced her relevant post-vaccination symptoms immediately or within minutes of the vaccination, rather than approximately four days later. *See* Amicus Br. at 43–47 (summarizing evidence); SAppx. 139–41.

But we need not and do not go further to decide the merits of that contention. Even when there is a "mistake," Rule 60(b) provides only that a court "may" grant relief from judgment, making the grant "discretionary," *Sioux Tribe*, 862 F.2d at 279. In the balance of finality and correctness policies built into Rule 60(b), 11 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2851 (3d ed. updated Apr. 2023) ("The rule attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done."), the potential that the judgment sought to be set aside would have been different but for the later-asserted error is a key consideration in exercising the discretion granted by the rule, *id.* § 2857 ("Relief will not be given if substantial rights of the moving party have not been harmed by the judgment."), a conclusion reinforced by the command of Rule 61 to apply a principle of harmless error, *see* Claims Court Rule 61 (providing that, "[u]nless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party—is ground for . . . disturbing a judgment" and that the tribunal "must disregard all errors and defects that do not affect any party's substantial rights"); *Shinseki v. Sanders*, 556 U.S. 396, 406–08 (2009); Wright & Miller § 2883. We have been pointed to no authority forbidding the tribunal to deny relief when accepting the asserted ground for Rule 60(b)

relief (here, a mistake) is not shown to have a reasonable chance of altering the judgment from which relief is sought. *See, e.g.*, *Dobyns v. United States*, 915 F.3d 733, 738 (Fed. Cir. 2019) (citing *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995)).

That showing has not been made here for the judgment rejecting the initial-onset claim. In denying Rule 60(b) relief, the special master, after noting the dispute about the timing of post-vaccination symptoms, immediately explained that he had "ultimately found that symptoms related to Ms. DiMasi's small fiber neuropathy and POTS began prior to her December 4, 2012 influenza vaccination" and that finding "was based on medical records and the testimony of [the Secretary's] expert, Dr. Leist, who opined that Ms. DiMasi's pre-vaccination history . . . were suggestive of pre-vaccination POTS and small fiber neuropathy." Appx. 194. The fairest understanding of that explanation is that the November 2019 finding about initial onset rested independently on the pre-vaccination records. That is enough to reject Ms. DiMasi's request for Rule 60(b) relief regarding the initial-onset claim, without deciding—what various precedents suggest may be the case here—that counsel's framing of the arguments and evidence related to the onset of symptoms amounts to a strategic litigation decision that is not grounds for relief under Rule 60(b)(1). *U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 896 (8th Cir. 2015) (stating Rule 60(b)(1) "does not permit litigants and their counsel to evade the consequences of their legal positions and litigation strategies, even though these might prove unsuccessful, ill-advised, or even flatly erroneous"); *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996) ("We also have held that Rule 60(b)(1) is not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument.");

*McCurry ex rel. Turner v. Adventist Health System / Sunbelt, Inc.*, 298 F.3d 586, 595 (6th Cir. 2002) (holding "that out-and-out lawyer blunders—the type of action or inaction that leads to successful malpractice suits by the injured client—do not qualify as 'mistake' or 'excusable neglect' within the meaning of Rule 60(b)(1)" (citation omitted)); *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) ("[A] party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes." (citation omitted)).

The special master did not abuse his discretion in making the determination we deem decisive on the initial-onset claim. The November 2019 opinion, while noting the timing statements in the records of Drs. Chen and Fischer, relies centrally on the pre-vaccination records as interpreted by Dr. Leist. Appx. 28–29. Dr. Leist's opinion, while noting the Chen/Fisher records as part of the extensive summary of medical records from 2008 to 2016, SAppx. 29, 34, 36, is readily understood as likewise relying centrally on the pre-vaccination records when drawing its conclusion about initial onset. SAppx. 35. And notably, neither Ms. DiMasi nor amici have set forth a persuasive concrete explanation of just how acceptance of a four-day delay in pertinent symptoms after the December 4, 2012 vaccination would undermine Dr. Leist's and the special master's interpretation of the pre-vaccination records. *See* Amicus Reply Br. at 21. In these circumstances, we affirm the special master's rejection of the Rule 60(b) challenge to the denial of the initial-onset claim.[5]

---

[5] In finding it unnecessary to resolve the dispute about the timing of manifestation of pertinent symptoms after the vaccination for purposes of the initial-onset claim, we do not preclude the special master from considering whether to resolve the timing dispute, on an appropriate

## B

We draw a different conclusion about Ms. DiMasi's argument for setting aside the 2019 judgment denying compensation so that she may present a significant-aggravation claim and have it duly adjudicated. In the specific circumstances established on the Rule 60(b) record actually made, we conclude that Ms. DiMasi is not bound by her then-counsel's disclaimer of a significant-aggravation claim. Whatever a differently developed record might have shown, the facts before the special master, taken together, met the demanding, extraordinary-circumstances standard for relief under Rule 60(b)(6). We hold that it was an abuse of discretion for the special master to decline to set aside the 2019 judgment to permit adjudication of a significant-aggravation claim in this case.

## 1

Rule 60(b)(6) authorizes the court to relieve a party from a judgment for "any other reason that justifies relief." The Supreme Court has ruled that the provision "grants federal courts broad authority . . . to vacate judgments whenever such action is appropriate to accomplish justice," *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–84 (1988) (quoting *Klaprott v. United States*, 335 U.S. 601, 614–15 (1949)), while also making clear important limits on when such relief is appropriate given the structure of Rule 60(b) and the strength of systemic finality interests: Rule 60(b)(6) may be successfully invoked "only when Rules 60(b)(1) through (b)(5) are inapplicable," *Kemp*, 142 S. Ct. at 1861, and, even then, only in "extraordinary circumstances," *Liljeberg*, 486 U.S. at 864 (quoting *Ackermann v. United States*, 340 U.S. 193, 199–200 (1950));

---

record, if doing so is material to an adjudication of the significant-aggravation claim (which we next hold to be required).

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393 (1993); *see Progressive Industries*, 888 F.3d at 1255; *Information Systems*, 994 F.2d at 795–96.  The first limit—the exclusion from (b)(6) of what is covered by (b)(1)–(5)—is not at issue here.  Whether this case involves the required extraordinary (equivalently, exceptional) circumstances is.

Courts in rare cases have found extraordinary circumstances to exist "when there is gross neglect by counsel and an absence of neglect by the party."  11 Wright & Miller § 2864 & n.50; *see*, *e.g.*, *Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012) ("Gross negligence by counsel amounting to virtual abandonment can be an extraordinary circumstance that justifies vacating a default judgment pursuant to Rule 60(b)(6)." (cleaned up) (quoting *Community Dental Services v. Tani*, 282 F.3d 1164, 1169–71 (9th Cir. 2002))); *Lal v. California*, 610 F.3d 518, 521 (9th Cir. 2010) ("[A]n attorney's gross negligence constitutes an extraordinary circumstance warranting relief from a judgment . . . ."); *Boughner v. Secretary of Health, Education & Welfare*, 572 F.2d 976, 978 n.9 (3d Cir. 1978) ("Gross neglect . . . by [an] attorney . . . constitute[s] [an] extraordinary circumstance[] permitting relief from a judgment under Rule 60(b)(6)." (citing *Lucas v. City of Juneau*, 20 F.R.D. 407 (D. Alaska 1957))); *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 122 (D.C. Cir. 1977) ("We in this circuit have held that so serious a dereliction by an attorney, when unaccompanied by a similar default by the client, may furnish a basis for relief under Rule 60(b)(6)." (footnotes omitted)).

We need not and do not draw a conclusion about all gross negligence.  Rather, it is enough that some attorney conduct so characterized can support a determination of extraordinary circumstances in which the client "may not be held accountable for his attorney's [gross] misconduct." *Tani*, 282 F.3d at 1172.  Such circumstances are rare, given the systemically important general rule that, in "our

system of representative litigation, . . . each party is deemed bound by the acts of his lawyer–agent." *Pioneer*, 507 U.S. at 397 (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634 (1962)); *see also* Restatement 3d Law Governing Lawyers § 27 cmt. c (2000) (updated May 2023) (stating the general rule that, "[b]y retaining a lawyer, a client implies that the lawyer is authorized to act for the client in matters relating to the representation"). But the general rule rests on the principles, founded in agency law, that govern the "normal attorney–client relationship," and in some circumstances those principles "do[] not bar Rule 60(b) relief when 'the evidence is clear that the attorney and [the] client were not acting as one,'" *Tani*, 282 F.3d at 1169 (quoting *Primbs v. United States*, 4 Cl. Ct. 366, 370 (1984)).

One such circumstance may be present when the evidence establishes that counsel has abandoned the client's "substantial rights" without actual authority by settling an important claim or taking an action comparable to such a settlement without adequate consultation with the client. *Pueblo of Santo Domingo v. United States*, 647 F.2d 1087, 1088, (Ct. Cl. 1981); *see Amin v. Merit Systems Protection Board*, 951 F.2d 1247, 1254 (Fed. Cir. 1991); *Bradford Exchange v. Trein's Exchange*, 600 F.2d 99, 102 (7th Cir. 1979); Restatement 3d Law Governing Lawyers § 22 cmts. d & e, § 27 cmt. d (2000) (updated May 2023); *id.* § 20 (duty of consultation with client concerning certain decisions). Such an exception to the general rule does not apply in common situations in which a claim is dropped or disclaimed—for example (not to be exhaustive) when one claim among several claims with largely duplicative key facts and chances of success is abandoned as a reasonable strategic choice for streamlining a case. But we conclude that the exception does apply in the circumstances established on this record in this case.

2

It is undisputed that counsel disclaimed a significant-aggravation claim without consultation with or authorization from his client. Ms. DiMasi asserts without contradiction that counsel never told her about the availability of a significant-aggravation claim, much less explained or obtained approval for the choice not to present such a claim. Amicus Reply Br. at 29; Appx. 31 (Rule 60(b) motion); SAppx. 188 (Ms. DiMasi's affidavit); SAppx. 160–61 (email from Ms. DiMasi); Appx. 153–56 (counsel's affidavit, nowhere asserting consultation with client about disclaiming significant aggravation). On the facts here, counsel's disclaimer creates an extraordinary circumstance.

Counsel's disclaimer came at a time when the Secretary had already disclosed expert opinion disputing an initial onset after the December 2012 vaccination. Initial onset was a matter of expert interpretation and diagnosis, not simply of Ms. DiMasi's testimony as a percipient witness, so there was a clear risk of complete absence of recovery if the initial-onset claim stood alone. A significant-aggravation claim addressed a critically different basis for recovery: worsening, rather than initial onset, of the conditions at issue. And, strikingly, the special master himself, pointing to the expert evidence, had expressly called for the parties to address significant aggravation. *See supra* pp. 7–9.

If there is reasonable explanation for that abandonment here, it has not been presented. No persuasive explanation has been offered here for why a commonplace pleading in the alternative would have, for example, created a self-defeating contradiction. *See, e.g., Locane*, 685 F.3d at 1379, 1381 (describing presentation of initial-onset and significant-aggravation claims "in the alternative"). Specifically, no such explanation has been offered for why Ms. DiMasi, without falsity or impairment of credibility, could not have said that, while she stands by her account

of what symptoms she had pre-vaccination and even her own interpretation of those symptoms, she understands that Dr. Leist interprets the pre-vaccination records differently and even if his inference of initial onset pre-vaccination is right (though she thinks it is not), certainly her condition got significantly worse post-vaccination. More specifically still, no persuasive explanation has been offered for the failure of counsel to have explained the foregoing to Ms. DiMasi, giving *her* the choice of risking all on an already-disputed initial-onset claim or pleading significant aggravation in the alternative.[6] The special master clearly saw the availability of a significant-aggravation claim, when calling for such a claim to be addressed, SAppx. 43–47, and, later, when denying the initial-onset claim, Appx. 29, as quoted at *supra* p. 9.

Yet counsel abandoned any significant aggravation claim without client consultation or consent. And after the loss on the initial-onset claim, counsel told Ms. DiMasi that the special master "believed that . . . [t]he onset of the tachycardia after the flu shot was too short to be the result of a significant aggravation of small fiber neuropathy." SAppx. 151; Amicus Br. at 65. No basis for that assertion to Ms. DiMasi has been identified. In fact, the special master stated at the end of his November 2019 opinion rejecting the initial-onset claim that, because "Ms. DiMasi explicitly stated that she is not pursuing a significant aggravation

---

[6]   If counsel thought that the needed choice was about whether to try simply to set the historical record straight even while sacrificing compensation, such a (here implausible) choice would be one about the client's "objectives," which is a choice reserved to the client. *See*, *e.g.*, Restatement 3d Law Governing Lawyers § 16(1); *id*. cmt. c ("The client, not the lawyer, determines the goals to be pursued . . . ."); ABA Model Rule of Professional Conduct 1.2(a).

claim," he would "*not address* whether Ms. DiMasi's pre-existing symptoms worsened after the vaccination." Appx. 29 (emphasis added).

In these unusual circumstances, we conclude that there was a particular kind of gross negligence that makes it clearly unreasonable to bind Ms. DiMasi to counsel's choice to disclaim the potentially critical significant-aggravation claim for compensation. Our conclusion relies on the aggregate of facts discussed and does not extend further. The special master's denial of Rule 60(b)(6) relief regarding significant aggravation was an abuse of discretion.

## III

For the foregoing reasons, we hold that the special master did not abuse his discretion in denying Rule 60(b) relief from the December 2019 judgment to revive the initial-onset claim but did abuse his discretion in denying Rule 60(b) relief from the December 2019 judgment to allow presentation and adjudication of a significant-aggravation claim. We affirm the judgment now before us in part, reverse it in part, and remand the case for further proceedings, consistent with this opinion, to permit presentation and adjudication of a significant-aggravation claim.

Costs to Ms. DiMasi.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**